UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-80022-CR-CANNON(s)

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

DEVON JAMAL GRAHAM, et al.,

                Defendant.

_____/

## STIPULATED STATEMENT OF FACTS

### A.    Elements of Offense

By his signature below, the defendant understands and acknowledges that were this matter to have proceeded to trial, the United States would have had to prove the following elements beyond a reasonable doubt:

As to **Counts 2 and 3** of the Superseding Indictment, which charge the defendant with Possession of Ammunition by a Convicted Felon (in Count 2), and Possession of a Firearm and Ammunition (in Count 3), in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8), respectively:

(1)    That the defendant knowingly possessed the ammunition, and in Superseding Count 3 only, the firearm, referenced in the Indictment, in or affecting interstate or foreign commerce, as charged;

(2)    That the defendant knew he had previously been convicted of an offense punishable by imprisonment for a term exceeding one year, that is, a felony; and

(3)    That before the defendant possessed the firearm the defendant had been convicted in a court of a crime punishable by imprisonment for a term in

excess of one year, that is, a felony offense.

The term "interstate or foreign commerce" includes any commerce between any place in a State and any place outside of that State. It is not necessary for the government to prove that the defendant knew that the firearm had moved in interstate or foreign commerce before the defendant possessed it, only that it had made such movement.

As to **Count 4** of the Indictment, which charges the defendant with Possession with the Intent to Distribute Controlled Substances, to include a mixture and substance containing a detectable amount of N-phenyl-N- [1- ( 2-phenylethyl )-4-piperidinyl] propanamide, commonly known as Fentanyl, and Cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), that:

(1)     The defendant knowingly possessed a controlled substance; and

(2)     The defendant intended to distribute the controlled substance.

To "intend to distribute" is to plan to deliver possession of a controlled substance to someone else, even if nothing of value is exchanged.

As to the defendant's knowledge of the specific type of controlled substance, "the government needs to prove only that a defendant knew a controlled substance was involved, not that the defendant knew what that controlled substance was." *United States v. Colston*, 4 F.4th 1179, 1189 (11th Cir. 2021).

As to **Count 5** of the Superseding Indictment, which charges the defendant with the Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c), that:

(1)          The defendant committed the drug trafficking crime alleged in Count 4 of the Superseding Indictment (that is, that the defendant knowingly and willfully possessed controlled substances, with the intent to distribute such to another person, with or without compensation);

(2)          The defendant knowingly possessed a firearm; and

2

(3)      The defendant possessed the firearm in furtherance of the drug trafficking crime, that is, that the firearm helped, promoted, or advanced the crime in some way.

**B.     Statement of Facts**

Had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt, through admissible testimony and evidence, which the defendant agrees, by his signature below, are true and correct facts, and satisfy all the necessary elements of the offenses of conviction referenced above and in paragraph 1 of the Plea Agreement:

1.      Detective Peter Adorno of the Palm Beach Gardens Police Department (PBGPD) would testify that on Wednesday, February 14, 2024, at approximately 2:36 p.m. numerous law enforcement agencies within Palm Beach County responded to the Gardens Mall, which is located in Palm Beach Gardens, Palm Beach County, Southern District of Florida, in reference to reports of a shooting.  Palm Beach Gardens Police Department (PBGPD) Officers located a blood trail inside the mall.  The blood trail led from the top of the stairs near the retail store Banana Republic, through the mall and into the retail store Macy's. Officers then followed the blood trail into the parking lot.

2.      Detective Adorno would testify that minutes thereafter, PBGPD officers obtained video surveillance footage from the interior of the mall.  This video footage captured the shooting, which depicts two males, identified as Devon Jamal GRAHAM, the defendant in this case, wearing a purple sweatshirt with a blue logo on the front, a purple beanie hat with blue on the tip area of the beanie, ripped blue jeans, and distinct blueish purple high top basketball style shoes, accompanied by a second male wearing a green

3

DG

sweatshirt (who shall be referred to as "Subject 2" herein), going down the escalator to the first floor at the west end of the mall. Defendant GRAHAM and Subject 2 were quickly followed down the escalator by another male wearing a black shirt and black shorts, subsequently identified as co-defendant Kemarcio Mitchell (hereinafter "KM"). KM appeared to be walking rapidly towards defendant GRAHAM and Subject 2 with his right hand inside his waistband as if he was retrieving or holding a weapon, and followed defendant GRAHAM and Subject 2 down the escalator steps. When defendant GRAHAM approached the bottom of the escalator, with Subject 2 located several steps higher on the escalator, defendant GRAHAM turned around and faced towards KM who had approached within approximately 5 feet from defendant GRAHAM on the escalator and rapidly raised a semi-automatic pistol and discharged five (5) rounds at KM. All of the aforementioned males then proceeded to flee from the area, KM having sustained a gunshot wound to his wrist which produced the blood trial referenced above.

3.      PBGPD Crime Scene Investigators would testify that shortly thereafter they arrived at the Gardens Mall shooting location and processed the scene at the bottom of the aforementioned escalator, and located four (4) expended Blazer and one (1) expended Remington-Peters 9 mm brass cartridge casings, all of which contained fired primers, for a total of five (5) expended rounds of ammunition, in the area where the shooting occurred. These expended pistol caliber shell casings are consistent with the firearm being fired by GRAHAM being a real and actual firearm.

4.      Detective Adorno would further testify that while PBGPD detectives were still on scene they obtained additional surveillance footage. The additional surveillance footage captured defendant GRAHAM and Subject 2 arrive at the mall in a 2022 Black Nissan

DG

Maxima bearing Florida temporary license plate "DNM5304." The footage shows defendant GRAHAM driving the vehicle and exiting the vehicle from the driver's seat of the vehicle.

5.    Shortly thereafter that same day, the aforementioned 2022 Black Nissan Maxima vehicle was located in the mall parking lot by PBGPD. The vehicle was later towed to the Palm Beach Gardens Police Department for processing based on their observation from the security video that the vehicle would contain fingerprints and DNA of the then-unidentified person discharging the firearm inside the Gardens Mall, which would provide material evidence assisting in identifying the shooter.

6.    While processing the passenger compartment of the vehicle, two firearms were recovered from within the 2022 Black Nissan, as well as a black pouch, which was discovered suspended or hanging from the turn signal lever affixed to the left-side of driver's steering column, defendant GRAHAM was observed driving to the mall earlier that day. A credit card with Devon GRAHAM's name was also found inside the vehicle.

7.    One of the two firearms recovered was determined to be a Romarm/Cugir Model Draco, AK-47 variant, 7.62 x 39 mm caliber semi-automatic pistol, with a sixty (60) round magazine inserted, and a total of 60 rounds of Wolf 7.62 x 39 mm caliber ammunition were recovered (59 in the magazine and one (1) round from the weapon's loaded chamber). An additional AK magazine containing twenty-nine (29) rounds of Tula 7.62 x 39 mm caliber ammunition, was found in a backpack within the vehicle's rear passenger area, for a total of 89 rounds of 7.62 x 39 ammunition. The second firearm was a Glock Model 26, 9mm semi-automatic pistol. Detectives would testify, as confirmed by crime scene photographs, that they noted when processing the vehicle that the front driver's side seat was found reclined far back, and that the Draco AK-47 variant pistol was located on the rear passenger

floorboard which would have been easily seen and within immediate reach as well as readily accessible to defendant GRAHAM while seated in the driver seat of the vehicle.

8.      Inside the aforementioned black pouch, PBGPD detectives discovered two subcontainers, one of which was a plastic bag containing 35 capsules, which Palm Beach County Sheriff's Office (PBSO) Senior Forensic Chemist Steven J. Williams would testify he performed a chemical analysis upon and determined contained a net weight of 5.22 grams of a mixture and substance containing N-phenyl-N- [1- ( 2-phenylethyl )-4-piperidinyl] propanamide, commonly known as Fentanyl.  Mr. Williams would further testify that inside the second subcontainer, a green prescription-type pill bottle, were several dozen white rocks, which his analysis determined contained 16.73 net grams of Cocaine.

9.      Agent Jerrell Negron of the West Palm Beach Police Department, who has been previously deemed qualified as an expert witness in Street Level Drug Trafficking in the United States District Court for the Southern District of Florida, would testify that: (a) based on his training and experience, as well as examination of the recovered evidence, to include the loaded firearm, that the quantity and packaging of the Fentanyl and Cocaine referenced in the preceding paragraph are inconsistent with a personal use quantity of Fentanyl and Cocaine, and are consistent with a distribution quantity of Fentanyl and Cocaine; and (b) that firearms are a common tool of the drug dealer's trade, and are commonly possessed by drug dealers to help, further, promote or advance their drug dealing business, so as to provide protection for themselves, their illegal drugs for sale, and the proceeds of their illegal drug sales.

10.     Certified criminal history documents obtained and introduced by Task Force Officer Kevin Drummond of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

from the Palm Beach County Circuit Court (PBCCC) would establish that at all time material hereto, that is, before February 14, 2024, that defendant GRAHAM had been convicted of at least the following felony offenses, each of which was punishable by a term of imprisonment for a term exceeding one year under Florida law:

a. On January 7, 2014, defendant GRAHAM was adjudicated guilty for Fleeing or Attempting to Elude a Marked Police Car in violation of Florida Statute 316.1935(2), in PBCCC Case No. 2013CF008213AXXXMB.

b. On January 7, 2014, defendant GRAHAM was adjudicated guilty for Fleeing or Attempting to Elude (High Speed Reckless) in violation of Florida Statute 316.1935(3), in PBCCC Case No. 2013CF011103AXXXMB.

c. On October 20, 2021, GRAHAM was adjudicated guilty for Possession of Heroin, Possession of Cocaine, both in violation of Florida Statute 893.13(6)(a), and Felon in Possession of a Firearm/Ammunition, in violation of Florida Statute 775.087(2) and 790.23(1)(a), (c), (e) and (3), in PBCCC Case No. 2018CF012177AMB.  As a result of this conviction, GRAHAM was clearly placed on notice that he was a convicted felon who could not lawfully possess a firearm or ammunition.

d. On October 20, 2021, GRAHAM was adjudicated guilty for two (2) counts of Uttering a Forgery in violation of Florida Statute 831.02, in PBCCC Case No. 502020CF002749AXXXMB.

11. ATF Special Agent Vince Rubbo, who has previously been deemed qualified and admitted as an interstate commerce expert witness as to firearms and ammunition in the Southern District of Florida, would testify he examined the aforementioned firearms and ammunition referenced above, and that on the basis of his training and experience, as well

DG

as the unique manufacturers' identification marks on the aforementioned firearm(s) and ammunition, S/A Rubbo would testify: (a) that he determined that the firearm(s) and ammunition were all manufactured outside the State of Florida, and that on the basis of those items subsequent recovery in the State of Florida, that such of necessity traveled in or affected interstate and/or foreign commerce; and (b) the firearm(s) and ammunition met the federal definitions of those items under Title 18, United States Code, Sections 921(a)(3) and 921(a)(17)(A).

12.     Additionally, Laura Molina, a Forensic DNA Analyst at DNA Labs International, and nationally and internationally accredited DNA testing facility, would testify that she compared the DNA obtained via a known DNA standard taken from defendant GRAHAM pursuant to a lawful search warrant, with DNA extracted from swabbing of the pill bottle and plastic bag inside of the black pouch and Romarm/Cugir Model Draco, AK-47 variant, 7.62 x 39 mm caliber semi-automatic pistol referenced in Counts 7 and 8 above, determined, and would testify to the following:

a.      As to swabs from front section of Romarm/Cugir pistol, the DNA profile obtained from this item indicates a mixture of at least four individuals with at least one male contributor. Devon J. Graham could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from this item is approximately 50 billion times more probable if the sample originated from Devon J. Graham and three unknown persons than if it originated from four unknown persons. This analysis provides very strong support for the proposition that Devon J. Graham is a contributor to the DNA profile obtained from the sample.

b.      As to swabs taken from the green prescription pill bottle referenced in

Paragraph 8 above (which contained the cocaine rocks), the DNA profile obtained from this item indicates a mixture of at least two individuals with at least one male contributor. This DNA profile was interpreted as three contributors. Devon J. Graham could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from this item is approximately 55 quadrillion times more probable if the sample originated from Devon J. Graham and two unknown persons than if it originated from three unknown persons. This analysis provides very strong support for the proposition that Devon J. Graham is a contributor to the DNA profile obtained from the sample.

        c.    As to swabs taken from the plastic bag containing the Fentanyl capsules referenced in Paragraph 8, above, the DNA profile obtained from this item indicates a mixture of at least three individuals with at least one male contributor. Devon J. Graham could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from this item is approximately 25 quadrillion times more probable if the sample originated from Devon J. Graham and two unknown persons than if it originated

DG

from three unknown persons. This analysis provides very strong support for the proposition that Devon J. Graham is a contributor to the DNA profile obtained from the sample.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY: _____
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY

BY: _____
SHANNON O'SHEA DARSCH
ASSISTANT UNITED STATES ATTORNEY

SEEN, AGREED AND APPROVED:

_____
DEVON JAMAL GRAHAM
DEFENDANT

_____
RALPH EDWARD KING, III, ESQ.
ATTORNEY FOR DEFENDANT

_____
GREGORY J. MORSE, ESQ.
ATTORNEY FOR DEFENDANT

Dated: _____7-23-24_____

At _____, Florida.

10